IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL ACTION** |
| | : | No. 11-36-11 |
| **CARIN SHONTEL SEALS** | : | |
| | : | |

McHUGH, J.                                                                                                    December 22, 2020

## MEMORANDUM

This is a motion for compassionate release under 18 U.S.C. § 3582.

On June 26, 2013, Petitioner Carin Seals was sentenced to 151 months' imprisonment, and five years' supervised release, by the late James Gardner of this Court. *See* Judgment, ECF 395; Tr. Sent. Hearing at 68-69. After changes to the U.S. Sentencing Guidelines, Ms. Seals's sentence was reduced to 121 months. *See* ECF 460. She has been in custody dating back to February 22, 2011. *See* Tr. Sent. Hearing at 55, ECF 442. In January 2011, shortly before being arrested, Ms. Seals gave birth to her daughter, N.K., who is currently cared for by Ms. Seals's mother, Dorthea Alexander. *See* Mot. for Comp. Rel., ECF 484.[1] In 2019, Ms. Alexander was diagnosed with pancreatic cancer, and Ms. Seals reports that the cancer has now spread. *See* Reply Brief at 1. Ms. Seals and Ms. Alexander both state that Ms. Alexander has become incapacitated and can no longer care for N.K. *See* ECF 484; Letter from Ms. Alexander, ECF 508. Accordingly, Ms. Seals now moves for compassionate release in order to care for her child and for her mother.

---

[1] Ms. Seals, filing *pro se*, submitted multiple documents in support of her motion, at ECF 484, 489, 497 and 508. She also filed a Reply Brief in response to the government's opposition, which was not filed on ECF but was emailed to all parties. The Court has considered all filings by Ms. Seals and by the Government in making this decision.

I am persuaded that adequate grounds for relief has been established, and the motion will therefore be granted.

## I.  Ms. Seals has established extraordinary and compelling reasons for release

### a. Defining extraordinary and compelling reasons

Under the First Step Act, courts may "reduce the term of imprisonment" and "may impose a term of probation or supervised release with or without conditions" upon consideration of factors in 18 U.S.C. § 3553(a) and a finding that "extraordinary and compelling reasons" warrant reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[2] Such a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress did not define "extraordinary and compelling" reasons when it first authorized the Bureau of Prisons to allow compassionate release. The United States Sentencing Commission has defined the term within the U.S. Sentencing Guidelines (U.S.S.G.). U.S. SENT'G GUIDELINES MANUAL § 1B1.13 (U.S. SENT'G COMM'N 2018). According to the Guidelines, extraordinary and compelling reasons for compassionate release include "the death or incapacitation of the caregiver of the defendant's minor child." *Id.* cmt. n.1(C). The Guidelines also include a "catch-all" provision. *Id.* cmt. n.1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [previous] subdivisions.").

Since passage of the First Step Act empowering District Courts to grant compassionate release in the first sentence, the Guidelines have not been updated. A majority of courts considering the scope of the "catch-all" provision have concluded that it allows courts

---

[2] Petitioners must exhaust their administrative remedies before filing a motion. *See* 18 U.S.C. § 3582(c)(1)(A). Petitioner filed a petition with the Warden on April 13, 2020. ECF 484 at 3. She therefore has exhausted her administrative remedies. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

independently to determine whether extraordinary and compelling reasons exist. *See e.g. United States v. Adeyemi*, 470 F. Supp. 3d 489, 509-510 (E.D. Pa. 2020) (Kearney, J.) (finding that "the new compassionate release regime mandates concurrent authority between the courts and the Director of the Bureau of Prisons" and that courts are "not hamstringed because the Sentencing Commission has failed to update the pertinent guidance" due to lack of quorum); *United States v. Babbitt*, No. 18-384, 2020 WL 6153608, at *4 (E.D. Pa. Oct. 21, 2020) (Savage, J.) ("Now, the courts have the power to grant motions without the BOP's moving or approving them. To permit the BOP to define what reasons qualify for compassionate release would essentially give it a gatekeeping role, one that Congress took from it."); *United States v. Andrews*, No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (Robreno, J.) ("Many district courts have now weighed in on this question and they overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"); *United States v. Clausen*, No. 00-291-2, 2020 WL 4260795, at *5-6 (E.D. Pa. July 24, 2020) (Pappert, J.); *see also United States v. Augustin*, No. 00-0004, 2020 WL 6929522, at *3-4 (D.V.I. Nov. 24, 2020) (collecting cases); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (finding that "based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements at any time . . . the Court can determine whether any extraordinary and compelling reasons other than those delineated in [the guidelines] warrant granting relief.") (internal quotations and citations omitted); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681-82 (N.D. Cal. 2019) (explaining that "Congress knew that the BOP rarely granted compassionate release petitions, and the purpose of the [First Step Act] was to allow defendants to file motions in district courts directly even after the BOP Director

denies their petition" and thus concluding that courts can independently determine whether any extraordinary and compelling reasons exist other than those delineated in the guidelines).

On the record here, I conclude that the Guidelines themselves would justify Petitioner's release. But even if they did not, I conclude independently that Petitioner is entitled to relief.

### b. Ms. Alexander's cancer diagnosis is an extraordinary and compelling reason

Documents provided by Ms. Seals show that in May 2019 her mother, Ms. Alexander, was diagnosed with "[u]nresectable stage IIB adenocarcinoma of the pancreas." ECF 497. Records from a doctor's visit in June 2020 report that Ms. Alexander "developed tremors, motor weakness and worsening neuropathy." *Id.* And in Ms. Seals's Reply brief, she reports that her mother's cancer has spread to her stomach, although she has not submitted medical documents to that effect. *See* Reply Brief at 1. Officers from the United States Probation Office for the Eastern District of Pennsylvania performed a "compassionate release investigation" to verify that if released, Ms. Seals would move in with her mother at the address provided. The officers confirmed this information and reported that "[i]n addition to living with her mother, [Ms. Seals] will reportedly act as a caregiver, as Ms. Alexander is currently undergoing cancer treatments and receives chemotherapy via a tube in her side."

Ms. Alexander submitted a letter to this Court stating that she is "not physically capable of taking care of [her] granddaughter" because she has "stage 4 pancreatic cancer" which necessitates chemotherapy treatments that leave Ms. Alexander "sick, as well as very weak." ECF 508.

Pancreatic cancer is one of the deadliest forms of cancer. When the cancer has spread outside the pancreas, as Ms. Seals reports it has, survival rates range between three and thirteen

percent. *See* Nat. Cancer Inst., Cancer Stat Facts: Pancreatic Cancer (2020).[3] The overall survival rate is just ten percent. *Id.* Ms. Alexander's doctor's notes reflect that she has already begun to experience incapacitating effects from the cancer, and the statistics show that this is sadly only going to progress over the next several months or years. Ms. Seals has therefore shown that the caregiver for her minor child is incapacitated.

The government argues that Ms. Seals must show that she is the only available caregiver for her daughter, but the cases cited in support relate to a separate section of the Guidelines, one which requires "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *See United States v. Doolittle*, No. 19-501, 2020 WL4188160, at *2 (D.N.J. July 21, 2020) (denying motion for compassionate release where petitioner's wife had a heart attack); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (denying motion for compassionate release where petitioner's husband had deteriorating health but where he was not "incapacitated").

In any case, Ms. Seals has shown that other caregivers are not available for her daughter. Ms. Seals reports that her daughter's father is currently serving a sixty-month sentence in Connecticut, is scheduled to be released in August 2022, and that "prior to being incarcerated he was unable to provide a stable home" for their daughter. ECF 484 at 1. Ms. Seals's siblings are unable to provide care: one sister already houses four children and three grandchildren in her "3 bedroom, 1 bath home," one sister has no stable living arrangements and has pending felony charges, and her brother is currently incarcerated. *Id.* at 2. Ms. Seals's sisters also submitted letters confirming that they are unable to take care of N.K. *See* ECF 508. Ms. Seals reports that

---

[3] Available at https://seer.cancer.gov/statfacts/html/pancreas.html

Ms. Alexander has been "the only constant caregiver" in N.K.'s life, ECF 484 at 1, and that "[t]here is no one else in defendant's immediate family capable of providing for defendant's daughter." *Id.*

As the First Step Act is new, there is relatively little case law on this ground for compassionate release; understandably, the vast majority of motions under this statute seem to have been related to the COVID-19 pandemic. Nonetheless, decisions from other courts are consistent with my ruling here. When it can be shown that family members, including minor children, are in dire need of a defendant's caregiving, and other family members are afflicted by incapacitating, life-threatening illnesses, courts have granted release. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-236, 2020 WL 2039028, at *6 (E.D. Ca. Apr. 28, 2020) (granting motion where adult son was disabled and other family member caretakers had become incapacitated through sickness and substance abuse); *United States v. England*, No. 18-61, 2020 WL 4004477, at *3 (D. Mont. July 15, 2020) (granting release where grandparents' ability to care for infant was impacted by child's special health needs and grandparents' financial difficulties); *United States v. Kataev*, No. 16-763-05, 2020 WL 1862685, at *3 (S.D.N.Y. Apr. 14, 2020) (granting release where child had cerebral palsy and leukemia, and child's mother was unable to provide care); *United States v. Vargas*, No. 88-325, 2020 WL 6886646, at *7 (S.D.N.Y. Nov. 24, 2020) ("Freed from the unyielding constraints of the Sentencing Commission's guidance, the Court credits [defendant's] wish to assist in the care of his sick mother in its assessment of extraordinary and compelling reasons.").

Where relief has been denied, it is typically where a caregiver is inconvenienced by the defendant's incarceration, or is somewhat sick, but not incapacitated. *See, e.g. United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352, at *5 (E.D. Pa. Oct. 9, 2020) (Slomsky, J.) (denying motion where defendant's wife had diabetes and breast cancer but had not shown she was

incapacitated by these conditions); *United States v. Nunez*, No. 2:13-00015, 2020 WL 5203429, at *2 (E.D. Ca. Sep. 1, 2020) (denying release where the caregiver suffered from diabetes, insomnia and hypertension but where there was no evidence as to incapacitation and where defendant's brother was cited in presentence report as a possible caregiver); *United States v. Peuse*, No. 17-00598, 2020 WL 5076356, at *5 (N.D. Ca. Aug. 24, 2020) (denying release where wife experienced vertigo and dizziness but was not otherwise incapacitated).

I find that Ms. Seals has shown that the caregiver for her minor child has become incapacitated and thus has established extraordinary and compelling reasons under the Guidelines. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13 cmt. n.1(C). And even if she were not eligible under the literal terms of the Guidelines, under the authority granted by the First Step Act, *Babbitt*, 2020 WL 6153608, at *4, I find that she has established "an extraordinary and compelling reason other than, or in combination with" the relevant Guideline factors. *Id.* cmt. n.1(D).

## II.     Other Factors Weigh in Favor of Release

I have also considered other relevant statutory factors in granting this motion. The First Step Act mandates that I consider "the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

For release motions filed by the BOP, the Sentencing Guidelines require courts to consider both whether there are extraordinary and compelling reasons for release and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. SENT'G GUIDELINES MANUAL § 1B1.13. Although the Guidelines have not been

revised since the First Step Act, judges have routinely evaluated these same factors in motions brought directly by defendants. The section 3142(g) factors include "the nature and circumstances of the offense," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. §3142(g)(1)-(4).

The crime to which Ms. Seals pleaded guilty is a serious one.  She participated in a drug trafficking organization by providing transportation for dealers in picking up large quantities of crack cocaine and powder cocaine.  Tr. at 72.  Some of this conduct occurred while Ms. Seals was already released after having pled guilty to bank fraud in the United States District Court for the District of Delaware.  Tr. at 75.  Although there was no specific victim of Ms. Seals's trafficking crime, she knew better than many the devastating impact of drugs on a community, having grown up with parents who struggled with addiction, and having battled with addiction herself.  Tr. at 74; 77.

The severity of Ms. Seals's sentence reflects the seriousness of her crime.  But Ms. Seals has now served more than 75% of her sentence, and, by one measure more than that, as explained below.  Ms. Seals has presented substantial evidence of her rehabilitation, including records from some of the many programs she completed in prison.  *See* ECF 484.  She participated in a Parenting Class, the "Assert Yourself" course,[4] the "Foundation" program,[5] the "Trauma in Life" course, the

---

[4] The BOP describes this eight-week course as a "CBI [Cognitive Behavioral Intervention] and psychoeducational program that teaches women to be assertive." *See* Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities (PA), U.S. Department of Justice, Bureau of Prisons (https://www.bop.gov/inmates/fsa/docs/ebrr_programs.pdf)

[5] The "Foundation" program is described by the Bureau of Prisons as a ten-session "[r]eentry focused goal setting program for women." *See* Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities (PA), U.S. Department of Justice, Bureau of Prisons (https://www.bop.gov/inmates/fsa/docs/ebrr_programs.pdf)

"Women's Relationships" course,[6] and various vocational courses. *Id.* Ms. Seals reports that she took courses in Finance, Life Skills, and Wellness, and that she earned her license in Fork Lift operation. *See* Reply Brief at 4. Ms. Seals also reports she participated in the nonresidential drug program and in drug education. *Id.*

In granting the BOP the power to consider compassionate release, Congress specifically provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), a limitation that the Commission incorporated into its commentary on the Guidelines. § 1B1.13 cmt.3. But for practical purposes, in determining whether a defendant poses a danger, their progress toward rehabilitation is an important consideration. Here, Ms. Seals's efforts carry significant weight.

I also attach significance to Judge Gardner's intentions at sentencing. He recommended that Ms. Seals receive credit for the time she spent in detention between February 2011 and June 2013. ECF 395; Tr. at 60. According to Petitioner, the BOP declined to adopt that recommendation. Reply Brief at 4. Judge Gardner further set forth his calculation of the total additional time Ms. Seals would be incarcerated after June 2013 as "eight years and three months." Tr. at 86. Judge Gardner then further reduced Ms. Seals's sentence by thirty months, in accordance with changes to the Guidelines. *See* ECF 460. At sentencing, Judge Gardner also recommended that Ms. Seals be accepted to participate in the Residential Drug Abuse Program (RDAP), for which she would likely earn additional credits against her sentence.[7] Tr. at 94-95. Ms. Seals reports that she was accepted for the program in August 2016, and should have been enrolled last

---

[6] The BOP describes the "Women's Relationships" course as a five session program "[t]eaching women about healthy interpersonal dynamics," which addresses "Antisocial Peers, Cognitions, Family/Parenting." *See* (https://www.bop.gov/inmates/fsa/docs/ebrr_programs.pdf)

[7] As described by the BOP, "RDAP is the Bureau's most intensive treatment program" that involves Cognitive Behavioral Therapy and is typically nine months in duration.
https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp

year, but due to COVID-19 the program has been cancelled.  *See* Reply Brief at 4.  By Petitioner's calculation, she also would have been eligible for "a year halfway house/ home confinement which would push her [release] date up to 2021."  *Id.*  In sum, the Judge who accepted Ms. Seals's guilty plea, who sentenced Ms. Seals, and who knew her case best, anticipated her release within a few months of this motion, which counts strongly in her favor.

The Probation Office has verified Ms. Seals's proposed residence upon release.  They confirmed that she will live with her mother, Ms. Alexander, and daughter, N.K., at the address provided.  They note that "[i]nspection showed the residence to be free from any potential hazards, firearms, etc., and is suitable for supervision purposes." And, as discussed above, they note Ms. Alexander's incapacitation due to her cancer treatment.

I conclude that Ms. Seals is not a danger to the community, and after examining the factors enumerated in 18 U.S.C. § 3553, 18 U.S.C. § 3142(g), and 18 U.S.C. § 3582, I find that Ms. Seals has met her burden to show that her motion for compassionate release should be granted. An appropriate order follows.

/s/   Gerald Austin McHugh
United States District Judge